# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER JOHNSTON and DAVID F. DICKINS,<br><br>Plaintiffs,<br><br>v.<br><br>IRONTOWN HOUSING COMPANY, INC., a reputed Utah corporation aka "IRONTOWN HOUSING CORPORATION, INC., a Utah Corporation" et al.,<br><br>Defendants. | CASE NO. 13-CV-0523 W (BLM)<br><br>ORDER DENYING:<br>(1) DEFENDANTS' MOTION TO DISMISS [DOC. 4]; (2) PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS [DOC. 5]; AND (3) PLAINTIFFS' EX PARTE APPLICATION [DOC. 18] |

Defendants Irontown Housing Company, Inc. ("IHC"), Richard P. Valgardson, and Kam Valgardson move to dismiss for improper venue, failure to sufficiently plead fraud, dismissal based on a California State License Board action, failure to state a claim, and failure to plead alter ego. Plaintiffs Heather Johnston and David F. Dickins move for judgment on the pleading, and have filed an ex parte application for leave to file supplemental evidence in opposition to Defendants' motion.

The Court decides the matters on the papers submitted without oral argument pursuant to Civil Local Rule 7.1(d.1).  For the reasons discussed below, the Court **DENIES** Defendants' motion to dismiss [Doc. 4], Plaintiffs' motion for judgment on the pleadings [Doc. 5], and Plaintiffs' ex parte application [Doc. 18].

I. BACKGROUND

Defendant IHC is a Utah corporation or other form of business entity which manufactures modular housing in Utah and does substantial business in California. (*Compl.*[1], ¶ 2; *MTD* [Doc. 4-1], 3:10-25.) IHC is qualified to act through subcontractors to carry out final installation and follow-up work in California. (*MTD*, 3:26-27.)

Plaintiffs are California residents, who purchased a residential lot in La Jolla, California, with plans to build a custom-designed modular home. (*Id.*, ¶¶ 1, 10.) On April 12, 2012, Plaintiffs entered into a written Sales and Purchase Contract (the "Contract") with Defendants for the purchase of a modular home. (*Id.*, ¶ 15.) Under the Contract, Defendants are responsible for "build[ing] the Structure" according to specification, "arrang[ing] the delivery of the Structure modules to the Site," "weatherproofing and protecting the Structure modules on-Site, setting the modules on the foundation, stitching the modules together and [performing] on-site construction, as set forth in the Contract Documents." (*Contract*[2], 30.) Defendants are also responsible for "trenching and installation of pipe, conduit and wiring unless said wiring, pipe or conduit must be installed by Utility Company." (*Id.*)

The Contract also includes a forum-selection clause mandating that Plaintiffs shall bring suit against Defendants in Utah "with respect to the work performed in the Factory," and only in California "with respect to the work performed onsite, including but not limited to the foundation, plumbing, utility work, concrete or site work as described in the contract documents." (*Contract*, 33.)

---

[1] The Complaint is attached as Exhibit 1 to the Notice of Removal [Doc. 1].

[2] The Contract is attached as Exhibit 2 to the Notice of Removal.

Once Defendants' manufacture of the modules was completed, inspected, and approved, the modules were delivered to Plaintiffs' lot for assembly and installation. (*Compl.*, ¶ 19.) Plaintiffs contend that on or about September 2012, they noticed a problem with the roof installation and notified Defendants. (*Id.*, ¶ 21.) Subsequently, Defendants and their subcontractors made "multiple botched repair attempts" to the roof. (*Id.*, ¶ 22.) Plaintiffs also allege that, upon removing and replacing the roof, they discovered additional defects and discrepancies with the manufacture and assembly of the modules and that Defendants had failed to make "critical repairs" to the electrical system that they claimed to have made. (*Id.*, ¶ 24.) Moreover, Plaintiffs allege that incorrect hangar hardware was used, doors and windows were out of plumb, electrical fire hazards resulted from improper wiring, a major support beam was installed upside down, and HVAC vents and ducts were damaged. (*Id.*, ¶ 26.)

On or about October 11, 2012, Plaintiffs requested a Certified License History from the California Contractors State License Board ("CSLB") for IHC, using the license number Defendants provided in the Contract. (*Compl.*, ¶ 17; *CSLB Cert.*[3], 56.) The CSLB responded that their search did not produce any record that IHC was licensed as a California contractor during the period of January 1, 2011 to October 17, 2012. (*Id.*)

In response to these events, Plaintiffs "sent an unfiled version of the Complaint to Defendants on December 18, 2012, giving them until December 27, 2012, to come to the table." (*Opp'n* [Doc. 6-1], 8:18-20.) Plaintiffs also ceased making payments on the modular home. (*MTD*, 5:10-11.) On December 27, 2012, Defendants filed their own complaint in the Fourth Judicial District Court in Utah County based on breach of contract and other claims. (*Id.*, 5:12-17.)

On or about January 8, 2013, Plaintiffs filed a lawsuit in the San Diego Superior Court alleging causes of action for recovery of compensation paid to an unlicensed contractor under California Business and Professions Code § 7031(b), breach of contract, fraud, negligent misrepresentation, unfair trade practices, and unjust

---

[3] The CSLB Certification of Records is attached as Exhibit 2 to the Notice of Removal.

enrichment. (*Compl.*, ¶¶ 27-54.) Defendants then removed the action to this Court on March 6, 2013, pursuant to 28 U.S.C. § 1441(b). (*Notice of Removal*, 1-5.) Defendants then moved to dismiss and Plaintiffs filed the motion for judgment on the pleadings.

### II. MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Defendants argue that the motion is premature because the pleadings are not closed. The Court agrees.

In Doe v. U.S., 419 F.3d 1058 (9th Cir. 2005), defendant moved to dismiss and plaintiff filed a cross-motion for judgment on the pleadings under Rule 12(c). The Ninth Circuit held that plaintiff's motion was premature because defendant had not yet filed an answer. Id. at 1061. Citing Rule 7(a) and Rule 12(c)'s language that such motions may be filed "[a]fter the pleadings are closed—but early enough not to delay trial[,]" the Ninth Circuit explained that "pleadings are closed for purposes of Rule 12(c) once a complaint and answer have been filed . . . ." Id.

Plaintiffs recognize that their motion is premature under Doe, but argue that "this case is a worthy exception to the rule" because they can prove no material issue of fact remains as to the first cause of action. (*Pl's Reply* [Doc. 10], 2:5–22.) The Court recognizes that other district courts have allowed a motion for judgment on the pleadings to proceed despite the fact that some defendants have not filed an answer. However, in those cases, the defendant against whom the motion was filed had filed an answer and, therefore, the pleadings were closed as to that defendant. See Johnson v. Dodson Pub. Sch., 463 F.Supp.2d 1151, 1156 (D.Mont. 2006) (motion allowed where relevant cause of action was only asserted against the defendant who had filed an answer); Noel v. Hall, 2005 WL 2007876 at *1–2 (D.Or. 2005) (motion allowed where two other defendants had not answered the complaint for five years); Moran v. Peralta Cmty. Coll. Dist., 825 F.Supp. 891, 894 (N.D. Cal. 1993) (motion allowed where another defendant had not been served with the complaint and thus was not yet a party).

In contrast to those district court cases, Plaintiffs motion in this case seeks judgment on the pleadings against Defendants who have not yet filed an answer. Under these circumstances, the Court finds an exception to Rule 12(c) is not warranted. Accordingly, the Court finds Plaintiffs' motion is premature.

### III.  MOTION TO DISMISS

Defendants base their motion to dismiss Plaintiffs' complaint on five grounds: improper venue based on a forum-selection clause; the *Colorado River*[4] abstention doctrine; failure to plead fraud with particularity under Rule 9(b); failure to state a claim for negligent misrepresentation under Rule 12(b)(6); and failure to plead the alter-ego theory. For the foregoing reasons, the Court finds the arguments unpersuasive.

#### A.  California is the proper forum for claims arising from work performed in California.

The enforceability of a forum-selection clause is determined by federal law. American Home Assurance Co. v. TGL Container Lines, Ltd., 347 F. Supp. 2d 749, 755 (N.D. Cal. 2004). Forum-selection clauses are prima facie valid and should not be set aside unless it can be shown that such a provision is unreasonable under the circumstances. Argueta v. Banco Mexicano S.A., 87 F.3d 320, 325 (9th Cir. 1996). "The party resisting enforcement of the clause has a heavy burden" to prove unreasonableness. Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F. 2d 273, 281 (9th Cir. 1984) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)). If the party does not meet this burden, "the provision should be respected as the expressed intent of the parties." Id. at 280.

Here, Defendants do not contend that the clause is unreasonable, but rather argue that the clause should be enforced. (*MTD*, 9:1-3.) Similarly, Plaintiffs do not dispute the

---

[4] See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

1  reasonableness of the provision and also argue for its enforcement.[5] (*Opp'n*, 3:4-12.)
2  Therefore, there is no dispute that the provision should be enforced as the expressed
3  intent of the parties.
4          The language of the forum-selection clause provides:

> In the event that either party seeks to enforce this Contract through resort to the legal process, the defaulting party agrees to pay the costs of such enforcement, including reasonable attorney's fees. This contract shall be deemed to have been made, and to be performed in the State of Utah, County of Utah and subject to Utah law with respect to the work performed in the Factory. This contract shall be deemed to have been made, and to be performed in, the State of California, County of San Diego, and subject to California law with respect to the work performed onsite, including but not limited to the foundation, plumbing, utility work, concrete or site work as described in the contract documents. In the event of any litigation with respect to this Contract, jurisdiction and venue shall be proper only in the applicable County as described above.

(*Contract*, Ex. 2 at 7-8.)

        Both parties interpret this provision as requiring that litigation relating to work performed in Utah must be filed in Utah, while litigation arising from work performed in California must proceed in California. (*MTD*, 8:27–9:3; *Opp'n*, 3:8–12.) The parties' central dispute, therefore, appears to be whether the claims in this lawsuit arise from work performed in Utah or California.

        Contrary to both parties' contention, the Complaint alleges problems with work performed in both states.  The Complaint pleads facts regarding the manufacture of the modules in Utah, as well as their installation and other onsite work performed in California.  For example, Plaintiffs allege that after removing the roof they contend was improperly *installed*, "they discovered additional defects and discrepancies with the *manufacture* and *assembly* of the modules that were previously concealed." (*Compl.* ¶¶ 22, 24, emphasis added.)

---

[5] Plaintiffs argue, in the alternative, that if the forum-selection clause mandates litigation in Utah, the clause may be unenforceable based on Defendants' lack of proper licensing. The Court need not resolve this issue given its finding that California is a proper forum.

With respect to the installation of the roof, the Complaint alleges that the work occurred in California: "Once IHC's manufacture of the modules was completed, inspected, and approved, IHC had the modules delivered to plaintiffs' Lot for assembly and installation." (*Compl.* ¶ 19.) While Defendants argue that the "roof was in fact installed in Utah," Defendants provide no evidence to support this statement. (*See MTD* 8:16–19.) The Court, therefore, will assume the truth of Plaintiffs' factual allegation that the roof was installed in California. Accordingly, California is the proper forum for claims relating to the roof's installation, as well as other work that Plaintiffs establish was performed in California.

Despite the Court's finding that California is a proper forum, the forum-selection clause nevertheless requires Plaintiffs to pursue claims related to work performed in Utah in that forum. Thus, to the extent Plaintiffs are seeking damages arising from defects and discrepancies that occurred during the manufacture and assembly of modules in Utah, Plaintiffs may not pursue those claims here, absent a waiver by Defendants.

### B. *Colorado River* **abstention is not appropriate in this case.**

Defendants next argue that the Court should dismiss the case in its discretion under the *Colorado River* abstention doctrine due to the CSLB and Utah actions. (*MTD*, 9:7, 10:6-27, 11:1-22.) The doctrine allows a district court to stay or dismiss a case because of a duplicative state proceeding, provided that exceptional circumstances exist. Colo. River, 424 U.S. at 818. Courts, however, are reluctant to abstain under the *Colorado River* Abstention Doctrine. See Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 912 (9th Cir. 1993). For several reasons, the Court finds abstention is not warranted here.

First, Defendants contend that the case should be dismissed based on the CSLB action. Defendants quote a portion of the Colorado River opinion for the proposition that if this Court exercises jurisdiction, it would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial policy concern." (*MTD*, 9:14-18.)

However, Defendants fail to identify the policy that would be affected by adjudication of this case, nor is the Court aware of any such policy. Therefore, Defendants' first argument lacks merit.

Defendants next contend that the Utah action concerns the same nucleus of operative facts and, therefore, warrants dismissal of this case. (*MTD*, 10:6-27, 11:1-2.) To support this contention, Defendants rely on the Colorado River Court's consideration of "wise judicial administration" and "regard [for] conservation of judicial resources and comprehensive disposition of litigation." (*Id.*, 10:10-13.) Defendants then argue that because the Utah Action was filed first, this case should be dismissed to avoid piecemeal litigation.

But the argument ignores the fact that piecemeal litigation is the direct result of the parties' freely negotiated forum-selection clause, which designates two different forums, depending on the type of work at issue. If the parties intended to avoid this result, the Court assumes they would have drafted the clause to designate the forum where litigation was first filed as the proper place to resolve litigation over work performed in both states. The clause, however, does not so provide. Given the "strong policy favoring enforcement of a freely negotiated forum selection clause[,]" (see Argueta, 87 F.3d at 324), the Court is not persuaded by Defendants' concern with piecemeal litigation.

Moreover, in evaluating whether to dismiss an action, Colorado River also considers "the inconvenience of the federal forum." Colo. River, 424 U.S. at 818. Given that this case involves work performed in California, this forum is convenient for any California witnesses and Plaintiffs, who are California consumers and residents.

Lastly, after Colorado River, the Supreme Court laid out another factor for consideration: whether state court proceedings offer adequate protection of the parties' rights. See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1 (1983). Plaintiffs allege that California and Utah law differ in an applicable way. Specifically, Utah law does not provide the remedy of disgorgement for unlicensed work,

while California does. (*Opp'n*, 5:22-24, 6:2-4.) To the extent Utah law would not adequately protect Plaintiffs' rights, this factor also weights against abstention.

For the foregoing reasons, the Court finds that the *Colorado River* Abstention Doctrine does not warrant dismissal of this action.

### C.   The fraud and negligent misrepresentation claims are adequately pled.

Defendants contend that Plaintiffs do not plead their third cause of action for fraud with particularity as required by Federal Rule of Civil Procedure 9(b) because they have not pled scienter or a causal relationship between the alleged fraud and their damages. The Court disagrees.

Under California law, the elements of fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Small v. Fritz Companies, Inc., 30 Cal. 4th 167, 173 (2003). In pleading fraud, Rule 9(b) requires plaintiffs "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must specifically identify the allegedly fraudulent statements or acts of fraud and plead evidentiary facts including the dates, times, places and person associated with each misrepresentation or act of fraud. See Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). One of the central purposes of the particularity requirement is to "ensure[] that allegations of fraud are specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985) (internal citations omitted).

Here, Plaintiffs contend that Defendants misrepresented that they "possessed the resources and the capability to make and lawfully install plaintiffs' custom designed housing modules on the Lot in California." (*Compl.* ¶¶ 11, 12, 14.) They also allege that Defendants represented that IHC held a general contractor's license numbered 949449 when, in fact, that license is assigned to Richard Paul Valgardson. (*Id.* ¶ 17.) These

alleged misrepresentations were contained in advertisements and in the contracts Defendants presented to Plaintiffs in April 2012. (*Id.* ¶ 12, 17.)

The Complaint further alleges that Defendants' misrepresentations concerning their ability "to make and lawfully install plaintiffs' custom designed housing modules on the Lot in California" caused them to enter into contracts with Defendants for the purchase and installation of their home. (*Compl.*, ¶¶ 14, 15.) Plaintiffs further contend that they would not have done so had they known the true facts, and "[a]s a direct and proximate result of Defendants' fraud and deceit, Plaintiffs have suffered damages in the amount not less than $460,979.00." (*Id.* ¶¶ 36, 39, 40.) Based on these allegations, the Court finds the Complaint "give[s] defendants notice of the particular misconduct ... so that they can defend against the charge." Semegen, 780 F.2d at 731. Accordingly, the fraud claim is sufficiently pled.

Defendants also argue that Plaintiffs have failed to plead the element of justifiable reliance under negligent misrepresentation. However, the Court finds this argument unpersuasive because, as discussed above, Plaintiffs have sufficiently pled a causal relationship between the alleged misrepresentations and their damages.

For the foregoing reasons, the Court finds that Plaintiffs have sufficiently pled claims for fraud and negligent misrepresentation.

### D.     Alter-ego liability is sufficiently pled.

Defendants argue that Plaintiffs do not sufficiently plead the alter-ego theory. The Court disagrees.

The "corporate veil will be pierced" where "(1) . . . there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) . . . if the acts are treated as those of the corporation alone, an inequitable result will follow." Mesler v. Bragg Management Co., 702 P. 2d 601, 606 (Cal. 1985) (citing Automotriz etc. de California v. Resnick, 306 P. 2d 1 (Cal. 1957)).

Here, Plaintiffs plead the necessary elements for alter-ego liability:

> [IHC] is wholly and exclusively controlled by R. Valgardson and/or K. Valgardson, that its funds are co-mingled with R. Valgardson and/or K. Valgardson's personal funds, that the debts of IHC are paid by R. Valgardson and/or K. Valgardson, and/or that IHC is an instrumentality used by R. Valgardson and/or K. Valgardson to illegally disclaim liability for their debts. There is a unity of interest between and among R. Valgardson, K. Valgardson, and IHC, and IHC is the alter ego of R. Valgardson and/or K. Valgardson. Equity demands that the corporate entity IHC be ignored and that R. Valgardson and K. Valgardson be held personally liable for the breaches by IHC below alleged.

(*Compl.*, ¶ 5.)

Defendants nevertheless argue that Plaintiffs claims are insufficient under Twombly, and cite McClaran v. Plastic Industry, 97 F.3d 347 (9th Cir. 1995), as support for this argument. But McClaran involved the dismissal of an alter-ego claim at the "close of presentation of [plaintiff's] evidence" because the "court found that [plaintiff] failed to prove by the requisite clear and convincing evidence . . . ." Id. at 358. In short, McClaran did not involve a motion to dismiss, and thus does not support Defendants' argument.

Because the Complaint sets forth the elements for alter-ego liability, the Court finds Plaintiffs have sufficiently pled the theory.

### IV.   CONCLUSION AND ORDER

In light of the foregoing, the Court **DENIES** Defendants' motion to dismiss [Doc. 4], Plaintiffs' motion for judgment on the pleadings [Doc. 5], and Plaintiffs' ex parte application [Doc. 18].

**IT IS SO ORDERED**.

DATE: July 17, 2013

_____
Hon. Thomas J. Whelan
**United States District Judge**