ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT [DOC. 66]

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER JOHNSTON and DAVID F. DICKINS,<br><br>　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>IRONTOWN HOUSING COMPANY, INC., a reputed Utah corporation aka "IRONTOWN HOUSING CORPORATION, INC., a Utah Corporation" et al.,<br><br>　　　　　　　　　Defendants. | CASE NO. 13-CV-0523 W (BLM)<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 66] |

　　　Plaintiffs Heather Johnston and David F. Dickins move for partial summary judgment against Defendant Irontown Housing Company Inc., a.k.a. Irontown Housing Corporation, Inc. ("IHC") as to (1) the first cause of action for disgorgement under California Business & Professions Code ("B&PC") § 7031(b) and (2) their claim for alter-ego liability as to Defendant Richard Valgardson. The motion is unopposed.

The Court decides the matters on the papers submitted without oral argument pursuant to Civil Local Rule 7.1(d.1).  For the reasons discussed below, the Court **DENIES** Plaintiffs' motion [Doc. 66].

## I.  BACKGROUND

The following facts are taken from this Court's February 18, 2014 order denying Plaintiffs' motion for judgment on the pleadings (the "Order" [Doc. 56]).

Defendant IHC is a Utah corporation that manufactures modular housing in Utah and is registered with the California Department of Housing Community Development as an approved factory-built housing provider under license #11-10462. (*See Order*, p. 2.)  Defendant Richard Valgardson is President of IHC and held a Class B General Contractor's license during the time of Plaintiffs' project.  (*Id.*, p. 2.)

Plaintiffs purchased a residential lot in La Jolla, California (the "Lot"), with plans to build a custom-designed modular home. (*Order*, p. 2.) On April 12, 2012, Defendants entered into a written Sales and Purchase Contract (the "Agreement") with Plaintiffs for the purchase of a modular home "to be constructed, delivered and installed on Purchaser's land." (*Agree.* [Doc. 1–3[1]], p. 1.) Under the Agreement, Defendants were responsible for "build[ing] the Structure" according to specification, "arrang[ing] the delivery of the Structure modules to the Site," "weatherproofing and protecting the Structure modules on-Site, setting the modules on the foundation, stitching the modules together and [performing] on-site construction, as set forth in the Contract Documents." (*Id.*, ¶ 5.)  Defendants were also responsible for "trenching and installation of pipe, conduit and wiring unless said wiring, pipe or conduit must be installed by Utility Company." (*Id.*)

The Agreement also includes a forum-selection clause mandating that Plaintiffs shall bring suit against Defendants in Utah "with respect to the work performed in the Factory," and in California "with respect to the work performed onsite, including but not

---

[1] A copy of the Agreement is attached as Exhibit 3 to the Notice of Removal [Doc. 1].

limited to the foundation, plumbing, utility work, concrete or site work as described in the contract documents." (*Agree.*, ¶ 20.) The clause also provides that the Agreement "shall be deemed to have been made, and to be performed in the State of Utah, County of Utah and subject to Utah law with respect to the work performed in the Factory" and "shall be deemed to have been made, and to be performed in, the State of California, County of San Diego, and subject to California law with respect to the work performed onsite. . . ." (*Id.*)

After the manufacture of the modules was completed, inspected, and approved, the modules were delivered to Plaintiffs' property for assembly and installation. (*Order*, p. 3.) However, in September 2012, Plaintiffs began noticing serious problems with the construction of their home, including a leaking roof, mold, insulation damage, inadequate electrical work, incorrect hangar hardware for deck joints, out of plumb doors and windows, a major support beam installed upside down and damaged HVAC vents. (*Id.*) As a result, on or about October 11, 2012, Plaintiffs requested a Certified License History from the California Contractors State License Board ("CSLB") for IHC, using the license number provided in the Contract. (*Id.*) The CSLB responded that IHC was not a licensed California contractor during the period January 1, 2011 to October 17, 2012. (*Id.*)

In response to these events, Plaintiffs sent an unfiled version of the Complaint to Defendants on December 18, 2012, giving them until December 27, 2012, to come to the table. Plaintiffs also ceased making payments on the modular home. On December 27, 2012, Defendants filed a state-court action against Plaintiffs in Utah for breach of contract and other claims. (*Order*, p. 4.) Approximately two weeks later, Plaintiffs filed a lawsuit in the San Diego Superior Court alleging causes of action for recovery of compensation paid to an unlicensed contractor under California Business & Professions Code § 7031(b), breach of contract, fraud, negligent misrepresentation, unfair trade practices, and unjust enrichment. (*Id.*)

On March 6, 2013, Defendants removed the action to this Court under 28 U.S.C. §1441(b). (*See Not. of Removal*.) Defendants then moved to dismiss or transfer this lawsuit to Utah to be joined with the Defendants' pending Utah case. Plaintiffs opposed, arguing that under the Agreement's forum-selection clause, their claims were properly filed in California. (*See Pl.s' Opp. to Defs.' MTD* [Doc. 6-1], pp. 3–4.) This Court agreed with Plaintiffs and denied Defendants' motion. (*See Order Denying MTD* [Doc. 19].) However, in addition to finding that California was the appropriate forum for claims based on work performed in California, the order also found:

> the forum-selection clause nevertheless requires Plaintiffs to pursue claims for work performed in Utah in that forum. Thus, to the extent Plaintiffs are seeking damages arising from defects and discrepancies that occurred during the manufacture and assembly of modules in Utah, Plaintiffs may not pursue those claims here, absent a waiver by Defendants.

(*Id.*, p. 7.)

Plaintiffs now move for partial summary judgement on the first cause of action for disgorgement. In addition, Plaintiffs seek summary adjudication on the claim that Defendant Richard Valgardson is the alter ego of Defendant IHC.

II.   LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Rule 56(d) provides for partial summary judgment. See Fed. R. Civ. P. 56(d) ("[T]he court . . . shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted."). Under

Rule 56(d), the court may grant summary judgment on less than the non-moving party's whole claim. Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.). Partial summary judgment is a mechanism through which the Court deems certain issues established before trial. Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) (quoting 6 MOORE'S FEDERAL PRACTICE ¶ 56.20 (3.-2) (2d ed. 1976)). "The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." Id.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

If the moving party meets its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence

in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

III.   DISCUSSION

    A.   **First Cause of Action for Disgorgement**

Plaintiffs move for partial summary judgment as to the first cause of action under California Business & Professions Code § 7031(b) against IHC. Under this statute, when work is performed in California without a required contractor's license, a plaintiff is entitled to disgorge the entire amount paid under the contact:

> . . . a person who utilizes the services of an unlicensed contract may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.

Bus. & Prof. Code, § 7031(b).) Thus, in order to prevail, Plaintiffs must establish that IHC: (1) did not have a California contractor's license; (2) performed work in California; (3) which required a contractor's license; and (4) the amount paid under the Agreement.

As stated in this Courts February 18, 2014 Order, it is undisputed that IHC did not have a California contractor's license. (*See Order*, p. 6.)   Therefore, the remaining issues are whether IHC performed work in California that required a contractor's license and the amount to which Plaintiffs are entitled under the Agreement.

//
//

### 1. IHC performed work in California

Plaintiffs contend that IHC performed work in California. (*P&A* [Doc. 66-1], p. 9.) In support of this contention, Plaintiffs rely on IHC's response to requests for admission in which IHC admits installing "the Structure referenced in the Contract, on property located in California . . . ." (*See McAteer Dec.* [Doc. 66-2], Ex. A [Doc. 66-3] at 3:23–4:2.) Based on this evidence, Plaintiffs have established that IHC performed work in California.

### 2. IHC's work in California required a contractor's license.

Business & Professions Code § 7031(a) "requires a person to be 'a duly licensed contractor at all times during the performance of the act or contract,' when 'engaged in the business or acting in the capacity of a contractor.'" See Twenty-nine Palms Enter. Corp. v. Bardos, 210 Cal. App. 4h 1435, 1449 (2012). Section 7026 broadly defines a "contractor" as:

> any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair . . . any building . . . or other structure, project, development or improvement, or to do any part thereof . . . .

Id. Although there do not appear to be any cases discussing whether these statutes require a licensed contractor to "install" a prefabricated home, the Court agrees with Plaintiff contention that such work requires a license.

In King v. Hinderstien, 122 Cal. App. 3d 430 (1981), the California Court of Appeal evaluated whether the installation of a prefabricated swimming pool was covered by statutes designed to govern transactions between customers and contractors engaged in the construction of swimming pools." Id. at 436. The swimming pool installer argued the installation did not require a license. The court disagreed for three reasons. First, the record confirmed "the obvious — many construction-like activities are intertwined with the installation of a prefabricated pool." Id. at 438. Second, "public policy underlying enactment of [the statute] is promoted by holding that installation of

prefabricated pools . . . falls within the scope" of the statute.  Id.  Third, "California case law demonstrates that *substantial installation* is to be considered within the purview of the Contractors License Law, since the public needs protection from builders who engage in work—be it construction or installation—upon projects which are or are to become a part of the underlying realty."  Id. at 442.

Here, IHC's Daily Log Reports demonstrate that the installation of Plaintiffs' prefabricated home in California involved activities such as plumbing, insulation, framing, and electrical and HVAC installation.  (*P&A*, p. 13, citing Ex. D [Doc. 66-6] at IHC 2003, IHC 2075, IHC 2241, IHC 260, ICH 2279.)  Thus, for the reasons stated in King, this Court finds the installation of Plaintiffs' home involved construction activities and thus California public policy is promoted by holding the installation of a prefabricated home falls within the scope of California's contractor's licensing law.  Moreover, because IHC's activities constitute substantial installation of a project that is to become part of the underlying realty, IHC's activities clearly fall within the purview of the licensing requirement.

This finding is further supported by the California Department of Housing and Community Development's Factory-Built Housing Handbook (the "Handbook"), which considers the installation of factor-built housing to be construction that requires a California contractor's license.  (*P&A*, p. 14, citing *Pl.s' RJN* [Doc. 30-2] at Ex. C (the Handbook).)  The Handbook states: "Any person who is licensed by the Contractors State Licensing Board to construct conventional housing may install [factory-built housing] units."  (*Pl.s' RJN*, Ex. C at p.6.)  For this additional reason, the Court finds IHC's installation of Plaintiffs' home in California required a contractor's license.

    **4.**  **Plaintiffs are entitled to disgorgement for the work performed in California.**

The sole remaining issue is the amount of disgorgement. Plaintiffs contend that under Business & Professions Code § 7031(b), they are entitled to all payments under

the Agreement, regardless of whether the payment was for work performed in California or Utah. (*P&A*, p. 15.) In support of this contention, Plaintiffs rely on cases holding that under section 7031(b), plaintiffs are entitled to recover the entire amount paid on an integrated contract, regardless of whether the payment was for services that did not require a contractor's license. (*Id.*, p. 16.)

For example, in <u>WSS Industr. Construc. Inc. v. Great West Contractors, Inc.</u>, 162 Cal. App. 4th 581 (2008), an unlicensed contractor argued that for purposes of determining the amount to disgorge, the contract should be separated based on activities that did not require a contractor's license (i.e., preparing designs and ordering materials) versus activities that required a license. <u>Id.</u> at 591–92. The court rejected the argument because the services were integral to the to the project as a whole. <u>Id.</u> at 592.

Plaintiffs' reliance on <u>WSS</u> and similar cases is misplaced because of a critical distinction with this case. Here, the issue is not simply whether defendant should be allowed to keep payments for services that did not require a contractor's license, but whether California law may apply to IHC's work in Utah, particularly given (1) Plaintiffs' explicit agreement that such work shall be subject to Utah law, not California law, and (2) this Court's enforcement of that agreement in denying Defendants' motion to transfer venue.

As discussed above, there is no dispute that the Agreement included a forum-selection clause mandating that Plaintiffs shall bring suit against Defendants in Utah "with respect to the work performed in the Factory. . . ." (*Agree.*, ¶ 20.) The clause also provides that the Agreement "shall be deemed to have been made, and to be performed in the State of Utah, County of Utah and subject to Utah law with respect to the work performed in the Factory." (*Id.*) And while Plaintiffs now urge the Court to disregard the forum-selection clause, Plaintiffs are reminded that they relied on that provision to avoid transfer of this case to Utah, where Defendants had already filed a lawsuit against Plaintiffs based on the exact same transaction. (*See Pl.s' Opp. to Defs.' MTD*, pp. 3–4; *Order Denying MTD*.) In light of these undisputed facts, the Court finds Plaintiffs may

not pick and choose when to enforce the terms of the Agreement. Indeed, if this Court was inclined to disregard the forum-selection clause, it would also be inclined to reconsider its prior order denying Defendants' motion to dismiss or transfer.

For these reasons, the Court finds Plaintiffs are not entitled to disgorge all payments made under the Agreement. Because Plaintiffs have not provided evidence demonstrating the amount paid to Defendants for work performed in California, Plaintiffs request for summary adjudication on the first cause of action is not appropriate at this time.

### B.  **Plaintiffs' evidence is insufficient to establish alter-ego liability.**

Plaintiffs also seek summary adjudication as to Defendant Richard Valgardson based on the alter-ego doctrine. For the following reasons, the Court finds Plaintiffs' evidence is insufficient to establish alter-ego liability.

Generally, "a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." Sonora Diamond Corp. v. Superior Court, 83 Cal.App.4th 523, 538 (2000). However, under the alter-ego doctrine, the corporate identity is disregarded because abuse of the corporate privilege justifies holding the equitable ownership liable for the corporation's actions. Id. But "[b]ecause society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution." Toho-Towa Co. Ltd. v. Morgan Creek Productions, 217 Cal. App. 4th 1096, 1107 (2013) (citation omitted). "Alter ego is an extreme remedy, sparingly used." Hasso v. Hapke, 227 Cal. App. 4th 107, 155 (2014) (citation omitted).

There are two essential elements to an alter-ego claim. First, there must be "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist."

Sonora Diamond, 83 Cal.App.4th at 538. Second, there must be an "inequitable result if the acts in question are treated as those of the corporation alone." Id. Facts supporting an inference of a unity of interest include: commingling funds and other assets; representing that an entity or officer is liable for the debts of the corporation; inadequate capitalization of the corporation; disregard of corporate formalities; and lack of segregation of records. Id. at 538–39 (citations omitted). "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." Id. at 539.

Here, Plaintiffs' alter-ego claim against Richard Valgardson is based on the following facts:

1. He is the sole owner of IHC.
2. He has treated IHC as an extension of himself.
3. He and IHC have serially disregarded corporate law and formalities. Specifically:
    a. IHC never authorized the sale of its business to KEB.
    b. IHC never actually owed stock to Richard, or anyone.

(P&A, p. 20–22.) These facts are insufficient to support alter-ego liability.

First, a sole proprietorship is a valid legal entity used to protect the owner from the corporation's debts and liabilities. It is, therefore, illogical to find that one's status as the sole proprietor supports an inference of alter-ego liability. Nor have Plaintiffs provided any authority indicating that a sole proprietorship is indicative of alter ego. To the contrary, "[a]n allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity." Leek v. Cooper, 194 Cal. App. 4th 399, 415 (2011).

Second, Plaintiffs argue that Richard Valgardson has "treated IHC as an extension of himself." (P&A, p. 20.) In support of this contention, Plaintiffs again point to his sole ownership of IHC. (Id., p. 20.) For the reasons stated above, Plaintiffs' reliance on this

fact is unpersuasive. Plaintiffs also point to evidence provided in a separate motion, which consists of random legal documents for various entities.[2] Plaintiffs have not explained, and the Court fails to see how those documents establish that Richard Valgardson treated IHC as an extension of himself.

Third, Plaintiffs contend that Richard Valgardson has "serially disregarded corporate law and formalities." (*P&A*, p. 20.) In support of this contention, Plaintiffs assert that IHC is "missing several pieces of critical documentation . . . ." (*Id.*) The missing documentation appears to consist of meeting minutes indicating that IHC's shares were issued to Richard Valgardson, and no documentation authorizing the sale of IHC to KEB. There are two problems with these documents.

Plaintiffs have failed to adequately demonstrate that the missing documents constitute a disregard of corporate formalities under Utah law. For example, while Plaintiffs take issue with the fact that IHC's minutes establish only one shareholder meeting per year, Plaintiffs have not cited any authority indicating that Utah law requires more than an annual meeting. Nor have Plaintiffs cited authority indicating that IHC's failure to issue stock to Richard Valgardson or the lack of minutes approving IHC's sale (in the context of a sole proprietorship) violates Utah law. In the absence of such authority, it is unclear whether or the degree to which IHC's corporate formalities have been disregarded.

Furthermore, assuming IHC failed to follow certain corporate formalities, the Court is not convinced that this fact alone is sufficient to pierce the corporate veil. Plaintiffs are reminded that alter-ego liability is a drastic remedy, to be used sparingly. And in evaluating application of the claim, courts are to consider a number of different factors, of which failing to follow corporate formalities is only one. See Sonora Diamond, 83 Cal.App.4th at 538–539; Associated Vendors, Inc. v. Oakland Meat Co.,

---

[2] Parties may not incorporate arguments or evidence attached in a different, previously filed motion. In the future, the Court will disregard arguments or evidence referenced in another motion.

210 Cal. App. 2d 825, 838–840 (1962).  Therefore, where evidence exists establishing only a failure to observe corporate formalities, courts have refused to pierce the corporate veil.  See Kozlowski v. Stroomberg, 2013 WL 6859882, at *4 (E.D. Cal. Dec. 30, 2013) ("Although [Defendant's] failure to hold annual meetings from 2009 to present may indicate a failure to observe corporate formalities, this alone is insufficient justification for piercing the corporate veil."); Folger v. Cottle, 2002 WL 414339, at *5 (Cal. Ct. App. Mar. 15 2002) (holding that "even if [plaintiff] could prove that [company] was undercapitalized, that fact alone is insufficient to invoke application of the alter ego doctrine.  It is, at best, merely a factor to be considered with all of the other evidence.") Instead, where alter-ego liability has been imposed, several of the factors supported the finding.  See Associated Vendors, Inc., 210 Cal. App. 2d at 840.

Because Plaintiffs' evidence, at best, establishes a failure to follow certain corporate formalities, the Court finds there is insufficient evidence to establish alter-ego liability as to Defendant Richard Valgardson.

IV.  **CONCLUSION AND ORDER**

In light of the foregoing, the Court **DENIES** Plaintiffs' motion for partial summary judgment [Doc. 66].

**IT IS SO ORDERED**.

DATED:  December 9, 2014

_____
Hon. Thomas J. Whelan
United States District Judge